IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE B.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

        Defendant.

Case No. 1:20-cv-01398-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Catherine B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in August 1959, making her fifty-seven years old on December 18, 2016, her amended alleged disability onset date. (Tr. 15, 163.) Plaintiff has an undergraduate degree in geology and past work experience as a museum director. (Tr. 27, 87, 449.) In her

PAGE 2 – OPINION AND ORDER

applications, Plaintiff alleged disability due primarily to depression and anxiety. (*See* Tr. 165-66, Plaintiff stopped working in December 2016 "due primarily to [her] depression" and "[a]nxiety attacks").

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 11, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on November 1, 2019. (Tr. 159-91.) On December 4, 2019, the ALJ issued a decision denying Plaintiff's applications. (Tr. 15-28.) On June 11, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-8.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 18, 2016, her amended alleged disability onset date. (Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[H]istory of breast cancer status post-surgery, degenerative disc disease, osteoarthritis, and dysfunction of a joint/impingement syndrome of the left shoulder[.]" (Tr. 18.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 20.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally crouch and climb ramps and stairs; (2) Plaintiff can frequently reach overhead bilaterally; (3) Plaintiff cannot crawl or climb ladders, ropes, and scaffolds; and (4) Plaintiff needs to "avoid hazards such as dangerous machinery and unprotected heights." (Tr. 20.) At step four, the ALJ concluded that Plaintiff was not disabled under the Social Security Act because she could perform her past relevant work as a museum director. (Tr. 27.)

PAGE 4 – OPINION AND ORDER

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to account for a portion of the opinion from one of Plaintiff's examining psychologists, Thomas Shields, Ph.D. ("Dr. Shields"); and (2) failing to provide legally sufficient reasons for discounting the opinion of Plaintiff's other examining psychologist, David Archambault, Ph.D. ("Dr. Archambault"). (*See* Pl.'s Opening Br. at 7, 9-10, 12.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of Plaintiff's applications for benefits.

**I.     APPLICABLE LAW**

Plaintiff filed her applications in November 2017. (Tr. 15.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'"

*Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "'the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding.'" *Id.*

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[3]

---

[3] The Commissioner argues that the new regulations "govern here . . . and supersede prior case law that conflicts with them," and that "the Court should not rely on any case law applying the old scheme." (Def.'s Br. at 5, 7.) The Commissioner is referring to case law that relied on the old regulations "describing a hierarchal value for opinions based on the doctor's relationship with the claimant," and "demanding heightened rationale to justify rejecting a treating or

PAGE 6 – OPINION AND ORDER

## II.     ANALYSIS

### A.     Dr. Shields

#### 1.     Dr. Shields's Opinion

Plaintiff presented for a psychological evaluation with Dr. Shields on April 24, 2019. (Tr. 1728-33.) Dr. Shields noted that he reviewed some of Plaintiff's mental health and addiction treatment records from 2017 and 2018 and an index of independence in activities of daily living, and he conducted a clinical interview and mental status examination. (Tr. 1728.) Dr. Shields also noted that Plaintiff reported that she was fired from her last job in December 2018 because her "'drinking outside of the job was interfering with [her] job'"; she went to rehabilitation in 2017 after receiving a trespassing ticket for breaking into her old house; she has a history of outpatient mental health counseling and "a history of being placed on an inpatient psychiatric hold in 2013 secondary to a suicidal gesture"; she first attended inpatient chemical dependency treatment in 1999 before returning in 2017; and she attends Alcoholics Anonymous meetings. (Tr. 1729; *see also* Tr. 163, the amended onset date of December 18, 2016 is based on when Plaintiff "stopped working").

Dr. Shields also observed that Plaintiff cited her "need to work on getting [her] physical ability and . . . mental [health] back" as barriers that are preventing her from working, and Plaintiff reported that she was "'feeling pretty good, for the most part' but . . . never feel[s] great" from a physical standpoint, her "depression 'is basically under control' with her current

---

examining medical source's opinion[.]" (Def.'s Br. at 4.) Consistent with its prior decision addressing this issue, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Drs. Shields's and Archambault's opinions, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

PAGE 7 – OPINION AND ORDER

medication," her depression "has been under control since her psychiatrist prescribed Abilify in August of 2018," her medications have "effectively quashed her panic attacks," and she "last experienced a full-blow panic attack 'probably before [she] went to rehab' in July of 2017." (Tr. 1730-31.)

In terms of diagnostic impressions, Dr. Shields determined that Plaintiff suffers from, among other things, major depressive and panic disorders that are "well controlled on medication," alcohol use disorder that is in "sustained full-remission since July of 2017," and a somatic symptom disorder. (Tr. 1732-33.) Dr. Shields also determined that (1) Plaintiff appeared capable of "understanding, remembering, and carrying out both simple[] and detailed[] instructions"; (2) Plaintiff performed "below expectations on a measure of concentration . . . , which may be due a combination of both [her status post] chemotherapy and active pain-related distractibility"; (3) Plaintiff is "likely to have some difficulty sustaining concentration on tasks over extended periods of time"; (4) there was "no indications of significant social dysfunction"; (5) persistence and pace are "expected to be mildly impaired by [Plaintiff's] distractibility"; and (6) Plaintiff's reports suggest that she "may have some difficulties tolerating the pressures of full-time [work]." (Tr. 1732.)

On April 28, 2019, Dr. Shields completed a medical source statement based on his April 24, 2019 evaluation of Plaintiff. (Tr. 1736-38.) In his medical source statement, Dr. Shields opined that Plaintiff suffers from (1) no limitation (i.e., "[a]ble to function in [the] area independently, appropriately, effectively, and on a sustained basis") in her ability to interact appropriately with the public, supervisors, and coworkers; and (2) a "[m]ild" limitation (i.e., "[f]unctioning in [the] area independently, appropriately, effectively, and on a sustained basis is slightly limited") in her ability to "respond appropriately to usual work situations and to changes

PAGE 8 – OPINION AND ORDER

to a routine work setting," understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (Tr. 1736-37.) Notably, when asked to identify factors (i.e., medical signs, laboratory findings, diagnoses, prescribed treatment and response, prognosis, etc.) that supported his assessment regarding mild limitations in the ability to understand, remember, and carry out simple and complex instructions, Dr. Shields stated that Plaintiff's "pain-related distractibility could make it difficult for her to sustain concentration on tasks over extended periods of time." (Tr. 1736.)

### 2. The ALJ's Decision

The ALJ determined that Dr. Shields's opinion was "well supported by his observation that the claimant attends Alcoholics Anonymous meetings [and] reported her depression as 'basically under control' since August 2018, and her panic attacks have been effectively quashed on medication since before she went into rehab in July 2017." (Tr. 26.) The ALJ also determined that Dr. Shields's opinion was "supported by the claimant's statements in her Function Report, and mental status exams of record[.]" (Tr. 26, citing Tr. 507-14, 1370-71.) Furthermore, the ALJ emphasized that Dr. Shields's "[m]ental status exam was grossly normal[.]" (Tr. 26, citing Tr. 1728-35.)

Plaintiff argues that the ALJ erred in assessing Dr. Shields's opinion because the ALJ found that Dr. Shields's opinion was "well supported" but he "did not consider and adopt [Dr. Shields's] opinion that pain-related distractibility could make it difficult for Plaintiff to sustain concentration on tasks over extended periods of time." (Pl.'s Opening Br. at 9.) Plaintiff argues that this error was harmful because the RFC and VE hypothetical did not include all of

PAGE 9 – OPINION AND ORDER

her limitations. (*See* Pl.'s Opening Br. at 10, Plaintiff asserts that her RFC and VE hypothetical are incomplete).

The Commissioner responds that Plaintiff's argument "ignores the fact that although Dr. Shields found Plaintiff was 'likely to have some difficulty sustaining concentration on tasks over extended periods of time' due to her 'pain-related distractibility,' he expected this impact to be only 'mild[].'" (Def.'s Br. at 11, quoting Tr. 1732.) Plaintiff disagrees and maintains that Dr. Shields "observed that her mental performance was *more than mildly* impacted by the combination of chemotherapy and pain-related distractibility." (Pl.'s Reply Br. at 4) (emphasis added).

As explained below, the Court concludes that any alleged error the ALJ committed in assessing Dr. Shields's opinion was harmless because it was inconsequential to the ultimate nondisability determination. *See Wilson v. Saul*, --- F. App'x --- , 2021 WL 2182122, at *2 (9th Cir. May 28, 2021) ("'Even when [an] ALJ commits legal error, [a court must] uphold the decision where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination[.]'" (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015))).

Notably, in this appeal, Plaintiff does not challenge the ALJ's treatment of the opinions of the state agency psychologists, both of whom reviewed Plaintiff's medical records and determined that Plaintiff was not disabled and suffers from only "[m]ild" limitations in concentration, persistence, and pace. (*See* Tr. 204-06, April 4, 2018, Sergiy Barsukov, Psy.D. ("Dr. Barsukov"), a non-examining state agency medical consultant, reviewed Plaintiff's medical records and determined that Plaintiff only suffers from "mild" limitations in her ability to "[c]oncentrate, persist, or maintain pace"; Tr. 275-77, July 11, 2018, Bill Hennings, Ph.D., a

non-examining state agency medical consultant, reviewed Plaintiff's medical records and agreed with Dr. Barsukov's finding that Plaintiff only suffers from "mild" limitations in her ability to "[c]oncentrate, persist, or maintain pace"). Thus, any error is inconsequential to the ultimate nondisability determination because the ALJ found only mild limitations in concentration, persistence, and pace and formulated an RFC (and VE hypothetical derived therefrom) that was supported by, and grounded in, these other psychologists' opinions. (*See* Tr. 25-26, the ALJ provided several unchallenged reasons in support of finding that the state agency medical consultants' opinions were "persuasive," and the ALJ noted that Plaintiff's RFC was supported by, and "grounded in," the state agency medical consultants' opinions described above; Tr. 19, the ALJ found only a "mild limitation" in Plaintiff's concentration, persistence, and pace). Accordingly, even if Plaintiff is correct in asserting that Dr. Shields "observed that her mental performance was more than mildly impacted," the ALJ's contrary findings remain unchallenged on appeal and thus the alleged error would not impact the ultimate nondisability determination.

In addition, Plaintiff does not challenge the ALJ's discounting of her testimony regarding her physical impairments, chronic pain, and difficulties maintaining her attention and concentration. (*See* Tr. 21-25, the ALJ provided several unchallenged reasons for discounting Plaintiff's testimony, including her testimony about pain and how her impairments impact her "concentration and focus"). That is noteworthy because this discounted evidence is the primary evidence that would support formulating a more restrictive RFC.[4] This further supports the conclusion that any alleged error would not impact the ultimate nondisability determination.

Furthermore, even assuming pain-related distractibility could make it difficult for Plaintiff to sustain concentration on tasks over extended periods of time, Plaintiff fails

---

[4] As discussed below, the ALJ did not commit harmful error in discounting Dr. Archambault's opinion.

PAGE 11 – OPINION AND ORDER

adequately to address why such a limitation could not be accommodated by normal breaks. *See Capps v. Berryhill*, No. 17-cv-02438, 2018 WL 4616018, at *5 (D. Md. Sept. 26, 2018) (explaining that "the normal 8-hour workday already includes breaks approximately every two (2) hours"). Plaintiff also fails to explain how her inability to sustain concentration on tasks would cause her to be off-task more than ten percent of the workday or miss more than one day of work per month. (*See* Pl.'s Opening Br. at 10; Pl's Reply Br. at 4; Tr. 186-87, noting that the VE testified that the hypothetical worker could not be off-task more than ten percent of the time, or miss two or more days of work a month on a regular basis, if she wanted to perform the jobs identified as suitable, and asserting that the ALJ's alleged error was harmful given the VE's testimony about time off-task and because the RFC did not include all of her limitations). Indeed, none of the evidence the ALJ found persuasive suggests that Plaintiff's limitations in maintaining concentration would result in her being off-task more than ten percent of the time.

      Finally, the Court notes that although Dr. Shields stated that pain-related distractibility could impact Plaintiff's ability to sustain concentration on tasks over extended periods of time and his diagnostic impressions included a "[s]omatic symptom disorder . . . with [a] predominant [focus on] pain," Dr. Shields also stated that a "psychologist is not qualified to comment on [a] claimant's physical health," Plaintiff's "physical problems . . . should be determined through medical evaluation," Plaintiff's "physical complaints" are "beyond the scope of this psychodiagnostic evaluation," and Plaintiff "describe[d] significant limitations due to her somatic pain and multiple medical issues, which are issues that will require medical review." (Tr. 1732-33, 1736.) Given these statements and the ALJ's unchallenged reasons for discounting Plaintiff's testimony, the ALJ's failure to account for the portion of Dr. Shields's opinion dependent on Plaintiff's physical impairments and self-reports of pain was not unreasonable.

For these reasons, the ALJ did not commit harmful error in evaluating Dr. Shields's opinion.

B.   Dr. Archambault

1.   Dr. Archambault's Opinion

Plaintiff presented for a psychological evaluation with Dr. Archambault on April 8, 2019. (Tr. 1743-51.) As part of his evaluation, Dr. Archambault reviewed some of Plaintiff's medical records and conducted a clinical interview and mental status examination. (Tr. 1743-47.) During the interview, Plaintiff reported that she suffers from depression, posttraumatic stress disorder ("PTSD"), bipolar disorder, and "significant anxiety"; her symptoms include crying spells, poor motivation, loss of interest in activities, isolating in her home, suicidal thoughts, hypervigilance, and fatigue; she has "been hospitalized 3-4 times in the last seven years," including three hospitalizations due to "a nervous breakdown or decompensation" and one due to "a suicide attempt"; and she has suffered from physical, emotional, and sexual abuse. (Tr. 1743-44.) Plaintiff also reported that she served as the director of a museum but was "laid off due to a lack of funding"; she had "a problem with alcohol in the past" but stopped drinking in 2017; and she struggled after her husband passed away in 2011 and she was diagnosed with cancer. (Tr. 1744-45.)

Dr. Archambault noted that Plaintiff had "significant difficulty concentrating during the evaluation" and "[r]epetition was required"; Plaintiff stated that "her mood is more positive now that she is on medication"; Plaintiff could recall only one of three objects after a five-minute delay; and Plaintiff was "able to correctly serially subtract 7 from 100," "correctly execute a four-step command," and "spell the word WORLD correctly, both forward and backwards." (Tr. 1745, 1748.) Dr. Archambault also emphasized that Plaintiff "does report that she has noticed significant improvement now that she is on medication"; Plaintiff's evaluation was

PAGE 13 – OPINION AND ORDER

"limited in scope and based upon a single time-limited session"; Plaintiff's condition was "considered to be treatable," as Plaintiff would likely experience "some symptom relief and partial recovery over the next 12 months" with "appropriate treatment"; Plaintiff's mood disorder questionnaire was "positive for bipolar disorder"; and Plaintiff is in "a higher than normal risk category for self-harm" based on, among other things, her PTSD and bipolar disorder diagnoses, "current serious medical condition" and treatment, recent suicidal ideation, and history of substance abuse, "six suicide attempts with hospitalization," and "sexual, physical and emotional abuse." (Tr. 1749.)

Additionally, Dr. Archambault offered several "diagnostic clinical impressions and [impairment-related] considerations[.]" (Tr. 1749.) His impressions and considerations included, among other things, that Plaintiff would have difficulty performing detailed and complex tasks; accepting instructions from a supervisor; interacting with coworkers and the public; "performing work activities on a consistent basis, without special or additional instructions"; "maintaining regular attendance and completing a normal workday/workweek, without interruption from a psychiatric condition"; and "dealing with the usual stress encountered in the workplace." (Tr. 1749-50.)

On May 6, 2019, Dr. Archambault completed a medical source statement based on his April 8, 2019 evaluation of Plaintiff. (Tr. 1740-42.) In his medical source statement, Dr. Archambault opined that Plaintiff suffers from (1) an "[e]xtreme" limitation (i.e., a "major limitation" that reflects "no useful ability to function in [the] area") in her ability to "make judgments on complex work-related decisions"; and (2) a "[m]arked" limitation (i.e., "serious limitation" that reflects "a substantial loss in the ability to effectively function") in her ability to carry out complex instructions, "respond appropriately to usual work situations and to changes in

a routine work setting," and interact appropriately with the public, supervisors, and coworkers. (Tr. 1740-41.)

### 2. The ALJ's Decision

The ALJ determined that Dr. Archambault's opinion was "not persuasive":

> This opinion is not persuasive. To begin with, the claimant provided limited information as to [the] extent of her history of alcohol dependence to [Dr. Archambault], and it is unclear what records [Dr. Archambault] reviewed. While Dr. Shields[] noted [that] the claimant had not been psychiatrically hospitalized since 2013, [Dr. Archambault] notes vaguely that [the claimant] was hospitalized for a nervous breakdown sometime in the last seven years. Further, [Dr. Archambault's] opinion appears excessive in light of the record as a whole, including mental status exams by examiners and the claimant's counselors at Options[.]

(Tr. 26, citing Tr. 1015-83, 1365, 1370-71, 1374-75, 1378, 1560.) Contrary to Plaintiff's argument, the ALJ did not commit harmful error in discounting Dr. Archambault's opinion.

Plaintiff does not offer any specific challenge to the ALJ's finding that Dr. Archambault's opinion was not persuasive on the ground that Plaintiff provided him with "limited information" about the severity of her past abuse of alcohol. (*See* Pl.'s Reply Br. at 5-7, noting that the Commissioner argued that the ALJ appropriately discounted Dr. Archambault's opinion based on his limited knowledge about the "severity" of Plaintiff's "past alcohol abuse," but failing to offer any specific argument or explanation as to why it was inappropriate for the ALJ to do so). In the Court's view, it was appropriate for the ALJ to find Dr. Archambault's opinion not persuasive given the limited (and apparently inaccurate) information Plaintiff provided Dr. Archambault about her past alcohol abuse. (*Compare* Tr. 1745, April 8, 2019, Dr. Archambault asked about Plaintiff's employment history and history of substance abuse and Plaintiff reported that "her last employment" was as the executive director of a museum, the museum "laid [her] off due to a lack of funding" and "[a]round that same time, she . . . went into rehab," and she "had a problem with alcohol in the past . . . [but] has not [drank] since 2017,"

PAGE 15 – OPINION AND ORDER

*with* Tr. 1729, April 24, 2019, Plaintiff informed Dr. Shields that she worked at the museum between 2005 and December 2011, she lost her most recent job in 2016 "because of her drinking," which was "interfering with [her] job," and she went through inpatient chemical dependency treatment in 1999 and 2017, *and* Tr. 163, 165-66, Plaintiff amended her alleged onset date to December 18, 2016 because that is when she "stopped working," and reported to the ALJ that she lost her last job in mid-December 2016 "due primarily to [her] depression" and "[a]nxiety attacks," not alcohol abuse or a lack of funding).[5]

It was also appropriate for the ALJ to find Dr. Archambault's opinion "excessive" in light of the record as whole. To be sure, the ALJ explained in his decision that (1) Plaintiff informed Dr. Shields that her primary impairments/the impairments that Plaintiff reported led to her most recent termination (i.e., depression and anxiety attacks) were well controlled with medication and/or effectively quashed; and (2) he found the state agency psychologists' conflicting opinions persuasive.

In sum, the ALJ did not commit harmful error in discounting Dr. Archambault's opinion. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted).

---

[5] The Court also notes that Plaintiff's daughter-in-law completed a third-party adult function report in February 2018, i.e., during the alleged period of disability. (Tr. 485-92.) Plaintiff's daughter-in-law provided these reports about Plaintiff's alcohol abuse: "[Plaintiff] binge drinks, drinking alcohol several weeks at a time with no breaks during the day—which causes her to be unfit for any job on a regular basis. . . . [Plaintiff] is unfit to spend time with her grandchildren alone. I have never personally witnessed an addiction problem so severe as [Plaintiff's]." (Tr. 485, 492.) During the administrative hearing, the ALJ asked Plaintiff about this February 2018 function report and Plaintiff testified that she "think[s]" her daughter-in-law was referring to the "past when she filled the form out" and not "looking at the present." (Tr. 164.)

PAGE 16 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 11th day of August, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge